UNITED METAL GOODS MFG. CO., Inc.,
v. LA BELLE SILVER CO., Inc., et al.

Civ. No. 12472.

United States District Court
E. D. New York.

May 16, 1952.

Morgan, Finnegan & Durham, by Hobart N. Durham, New York City, for plaintiff.

Holland, Armstrong, Bower & Carlson, by Norman N. Holland, and John M. Cole, New York City, for defendants.

BYERS, District Judge.

This is an action for infringement of the plaintiff's design patent No. 162,985, granted April 17, 1951 on application filed April 25, 1949, and for unfair competition, the complaint having been filed February 26, and the answer March 6, 1952.

The design is for a liquid serving unit consisting of a plunger operated bottle for beverages, surrounded by a tray holding glasses into which the beverage is siphoned, the combination being enclosed in a sphere, the upper and lower hemispheres being detachable and the upper one being surmounted by a handle device of crossed tenpins. When closed, the sphere resembles a bowling ball in appearance. The lower hemisphere is supported by a base having a depth of nearly a third of the vertical diameter of the sphere, and the design of the device is attractive.

That the defendants have offered for sale an infringing device (Cantor Exhibit No. 3) is too clear for dispute, and its contemplated slightly different device (Cantor Exhibit No. 5) differs from the latter only in the form of the surmounting handle which in pictorial representation, seems not to include one or more tenpins. The defendants have made a motion for summary judgment, the searching aspect of which is the challenge to the validity of the plaintiff's patent.

There are subsidiary issues, namely, alleged unfair competition on the part of the defendants and oppressive use of the patent by the plaintiff, involving purported threats to the defendants' business, both of which would require the taking of testimony if a decision of that aspect of the controversy should be required.

The defendants' showing on the question of validity is impressive, reliance being had upon the product patent of Bazelon No. 2,529,368, granted November 7, 1950 on application filed July 22, 1946, for a cellaret having a combined musical device and rotatable rack. The essential elements are a bottle, obviously to hold beverages, with a surrounding rack or tray holding glasses, which rack is rotatable. The pertinent statement is in the recitals, page 1, lines 39, et seq.:

"The rotating cellaret includes a casing generally designated at 10. As shown, the casing is made in spherical form and has lower and upper component semispherical parts 11 and 12, respectively. Rabbets 13 at the juncture of the component parts maintain the two parts in assembled relation but permit removal of part 12 from part 11. The component parts 11 and 12 may be suitably molded from plastic."

At page 3, line 22, in the specifications, the following appears:

"To facilitate removing the upper component part 12 of the casing 10 and to cause the spherical casing 10 to represent a bowling ball, for example, it is provided with finger recesses 51."

It is unnecessary to go into the other aspects of the patent which involve a music box actuated by a spring situated in the base. The Figures 1 and 3 disclose a structure resembling a bowling ball resting on a base which seems to differ in appearance from the plaintiff's device only in that there is no surmounting handle on the upper hemisphere to facilitate its removal. The fact that the bottle shown in the drawings would evidently have to be lifted in order that part of its contents could be poured into the glasses resting on the tray, does not affect the resemblance in appearance or design between the completed assemblage shown in the plaintiff's patent and that of Bazelon.

The differences in design between the respective structures concern only minor matters, such as the absence in Bazelon of a handle for lifting the upper half of the casing, and the kind of a bottle which constitutes, of course, the most potent element of the entire assembly.

The bearing of the Bazelon patent is sought to be minimized on the theory that its date of issue (November 7, 1950) is later than the filing date of the patent in suit (April 25, 1949), and it is urged that the disclosure could be measured only by an examination of the Bazelon application filed July 22, 1946. Since it is necessary to strive to understand what the art knew in measuring the advance, if any, made by this plaintiff, the Bazelon patent is thought to constitute prior art: Western States, etc., v. S. S. Hepworth, etc., 2 Cir., 147 F.2d 345, at pages 348, 349.

The difficulty of obtaining a valid design patent has been pointed out in this Circuit as recently as in January of this year, Briddell, etc., v. Alglobe, etc., 194 F. 2d 416 at page 419, and the cases cited in that connection have been examined and uniformly state the rule to be, Bell, etc., v. Catalda, etc., 2 Cir., 191 F.2d 99 at page 104:

> "We have held that such a patent is invalid unless it involves 'a step beyond the prior art', including what is termed 'inventive genius.' A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98, 99. We have noted that, as in all patents, there must be a substantial advance over the prior art."

The facts in that case are quite remote from these, but the statement of the rule is entirely in accord with prior holdings, such as White v. Leanore, etc., 120 F.2d 113, at page 114:

> "The validity of a design patent depends upon the same factors as that of a mechanical patent: the condition of the art when the design was made; how long the need had existed; how nearly the art had approached the new design and when; how far the design met with popular approval and displaced other designs when it appeared."

It is true that the court further observed that in determining such matters, "the only safe course is to let the action go to trial." That was said in connection with the affirmance of the denial of temporary injunction, and later in point of time than the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A.

See, also, Nat Lewis Purses v. Carole Bags, 2 Cir., 83 F.2d 475 at page 476. A brief summary of earlier decisions in such matters appears, 83 F.2d at page 476, which includes the following:

> "Some opinions appear to imply that if a design be new and pleasing enough to catch the trade, nothing more is required. * * * we held that a design patent must be the product of 'invention,' by which we meant the same exceptional talent that is required for a mechanical patent."

Neufeld-Furst, etc., v. Jay-Day, etc., 2 Cir., 112 F.2d 715 and A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98, are to the same effect.

This record shows in addition to the bowling ball liquid dispensing concept above referred to, a dispensing bottle assembled with tray to hold glasses, the contents of the bottle being decanted into the glasses through the operation of a dispensing pump, meaning that the bottle does not have to be moved in order to perform its function (the importance of which is frequently the subject of debate).

Reference may be had also to the Sherman design patent No. 102,949, granted January 26, 1937 (application filed November 4, 1936). That device seems to have been the subject of a registered trademark "The Merry-Go-Round," registered March 30, 1937 (application filed November 4, 1936), in the statement of which reference is made to the use of the trademark "for liquid containers and dispensers consisting of combined decanter, decanter neck dispensing pump, decanter borne tray and glasses." This seems to be pertinent to the constituency of the art.

Such incidental ornamentation as may reside in the plaintiff's design of the crossed tenpins, which constitute the lifting handle of the upper sphere, has been in use in connection with athletic trophies and has been broadly advertised in that way.

The plaintiff's own theory of the defendants' invasion of this patent was stated

in the deposition of its president as follows:

"I am only objecting to the pump set in the ball. There is nothing on the market before, as far as I know, such as a pump set in a ball, and that is what I am objecting to."

That testimony directs attention to the difference between the so-called pump operated bottle of the plaintiff, and the conventional bottle of the Bazelon patent, as identifying the step forward in the matter of design which is relied upon to establish validity. Truly that kind of bottle is an important part of the plaintiff's design, but on the whole its substitution for a bottle from which the contents would be poured (which would require a lifting of the bottle from its seat as in Bazelon), would reflect only such an adaptation of one form of dispensing over another, as to lie within the competence of one ordinarily skilled in the mechanical requirements with which this patent deals.

It results that the question of validity seems to be too clear to justify a denial of the defendants' motion. However much it is to be regretted that the law has not seen fit to protect such originality as the plaintiff may have displayed in designing something which had not previously been offered to the public in this precise embodiment, there seems to be no way to protect the originator unless he can establish patentable invention.

The allegations of unfair competition, pro and con, seem not to require adjudication because they can scarcely be conceived of as existing exterior to the question of validity. In this connection, it is to be observed that the plaintiff's product is not identified by its name or mark. Its customers are jobbers who prefer to keep the origin of their wares unknown to retail distributors.

The oppressive conduct attributed to the plaintiff in the defendants' affidavit upon which this motion was based (pages 5 and 6) is categorically and persuasively denied in the answering affidavits.

The efforts of the defendants to procure the bottles used by the plaintiff from its manufacturers, referred to in the opposing affidavits, seem not to have been denied in any affidavit in reply, and that conduct, if committed, would be consistent with an unaccomplished purpose to induce customers to accept the defendants' product as identical with that of the plaintiff's. Since such a purpose, if it existed, never came to fruition, its exposure could not show more than a willingness to hit below the belt in a commercial sense.

These matters, if resolved in favor of the plaintiff as the result of taking testimony, could not avail to overcome the objections to the validity of the plaintiff's patent which seem to constitute an insurmountable obstacle to granting the plaintiff the relief to which it would be entitled if the element of good faith in the conduct of American business was deemed to be as important as the preservation of competition.

The result of the foregoing is that the defendants' motion for summary judgment must be granted upon the issue of validity. Settle order.